FILED

SEP 0 8 2011 NF
Sep 8, 2011
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **Hearthware, Inc.,** ) | |
| **An Illinois corporation,** ) | |
| ) | |
| **Plaintiff,** | 11cv6271 |
| **v.** | Judge Samuel Der-Yeghiayan |
| | Magistrate Arlander Keys |
| **Script to Screen Productions,** | |
| **A California corporation,** | |
| ) | |
| ) | |
| **Defendant.** ) | **Trial by Jury Demanded** |

**COMPLAINT**

COMES NOW Plaintiff, Hearthware, Inc., by and through the undersigned counsel,

and for its Complaint at Law against defendant Script to Screen Productions, a

California corporation, states as follows:

INTRODUCTION

1.  This lawsuit alleges the following causes of action against defendant

    Script to Screen Productions ("STS"): Breach of Fiduciary Duty,

    Conversion, Promissory Estoppel and Unjust Enrichment, as well as

    violation of the Illinois Consumer Fraud Act (815 ILCS § 505/1 et seq.).

2.  Plaintiff Hearthware, Inc. ("Hearthware") seeks to secure relief as follows:

    Hearthware seeks an award of not less than eighty thousand dollars

    ($80,000.00) for the reasonable return of portions of its one hundred and

    fifty thousand dollars ($150,000.00) in deposit monies made to STS in

    connection with Hearthware's dealings with STS, and an award to be

1

determined at trial for damage and/or injury to its business caused by the actions of STS, costs, interest, attorneys' fees, and punitive damages of not less than seventy-five thousand dollars ($75,000).

## PARTIES

3.  Plaintiff Hearthware is a corporation organized under the laws of the State of Illinois, with its principal office located at 1795 N. Butterfield Road, Libertyville, Illinois 60048.

4.  Defendant STS is a California corporation, with its principal office located at 200 North Tustin Avenue, Suite 200, Santa Ana, California 92705.

## JURISDICTION AND VENUE

5.  This Court has federal diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000 and complete diversity of citizenship exists between Hearthware and STS.

6.  Venue in this district is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial portion of the events, acts or omissions alleged herein took place in part in this district, and the damages suffered by the plaintiff have been sustained within this judicial district.

7.  STS is subject to personal jurisdiction before this court, as it conducts business activities within this jurisdiction and has purposefully availed itself of the laws of this State.

## FACTUAL BACKGROUND

8.  Hearthware is a company that sells household products.

9. STS is, and at all times relevant has been, an infomercial production company.

10. In 2010, Hearthware engaged in efforts to develop an infomercial advertisement (the "Infomercial") for a new product (the "PIC") that it intended to release for sale to the public in the spring of 2011.

11. On or about September 8, 2010, Hearthware and STS entered into a letter of agreement ("Letter of Agreement") for the production of the Infomercial, which called for Hearthware to issue a $25,000 deposit to STS. (Exhibit A, Letter of Agreement).

12. Hearthware and STS entered into the Letter of Agreement with the understanding that the terms of a formal infomercial production agreement and a formal budget would be agreed upon at a later date.

13. On September 16, 2010, STS agents/employees Joanie Laxson, Veronica Nkuo, and Kirk Gross met with Hearthware employees in Hearthware's Illinois office, for a day-long meeting regarding the Infomercial production.

14. At the September 16, 2010 meeting, Hearthware provided to STS agent/employee Veronica Nkuo its $25,000 deposit called for under the Letter of Agreement.

15. STS was aware that Hearthware intended to release the PIC and the Infomercial in the spring of 2011.

16. Hearthware informed STS of its budget, and STS represented that it could provide Hearthware with its desired Infomercial at Hearthware's communicated budget and within its target timeline.

17. On November 4, 2010, Dinsmoor provided to Hearthware via email a proposed line item budget for creation of the Infomercial.

18. The parties did not agree to the November 4, 2010 budget.

19. On December 3, 2010 STS employee Alex Dinsmoor emailed Hearthware employee Opie Griffin and encouraged Hearthware's issuance of a deposit check in the amount of $125,000, stating in part:

> "This payment would also be treated much like the deposit where unused portions would be returned if for some reason the project does not proceed. I really hope that does not happen, but I want to make sure you see that the entire payment amount is not at risk, and you are simply keeping the project moving to the next step."

20. Hearthware relied upon Dinsmoor's representation that, as with its initial deposit, STS would handle Hearthware's second payment like a refundable deposit.

21. On or about December 9, 2010, Hearthware submitted to STS its $125,000 deposit pursuant to the invoice and relying upon the representations of STS.

22. Both before and after issuance of deposit monies by Hearthware, STS represented to Hearthware that unused portions of deposit monies would be refundable in the event that the Infomercial production project did not proceed with STS.

4

23.     On March 1, 2011, STS submitted a budget to Hearthware for the
        production of the Infomercial, with a total budget hundreds of thousands
        of dollars in excess of Hearthware's communicated budget.

24.     On or about March 14, 2011 Hearthware terminated its relationship with
        STS with regard to production of the Infomercial and requested
        reconciliation of its deposit funds. This termination occurred prior to
        filming and editing of the Infomercial.

25.     Hearthware continued to maintain a relationship with STS with regard to
        set construction for the Infomercial and other ancillary matters.

26.     On April 5, 2011 STS communicated to Hearthware that its deposit funds
        would not be returned.

27.     STS submitted to Hearthware a reconciliation itemization of its charges
        (hereinafter "Reconciliation") to which Hearthware's deposit monies
        were applied. With respect to certain line item charges on the
        Reconciliation, STS charged Hearthware the full amount quoted in a
        proposed budget from November 2010. Thus, STS unilaterally asserted
        entitlement to the full charges for such line items while not performing
        100% of the services contemplated by the proposal.

28.     After receipt of the Reconciliation, Hearthware again requested
        reasonable return of its deposit monies, and STS declined to do so.

29.     Hearthware eventually terminated all dealings with STS, including with

        regard to set construction for the Infomercial, due to its lost trust and

        confidence in STS resulting from its actions as described herein.

30.     Termination of its relationship with STS with regard to set construction

        for the Infomercial and other ancillary matters caused Hearthware to

        sustain financial damages, including costs associated with materials,

        transportation and labor for the completion of the Infomercial set

        construction.

31.     The Infomercial and PIC were eventually completed and released in the

        summer of 2011.

**COUNT I**
**ILLINOIS COMMON LAW UNJUST ENRICHMENT**

32.     Hearthware realleges and incorporates by reference the allegations

        contained in all preceding paragraphs of this Complaint as part of this

        cause of action.

33.     Hearthware issued two deposit checks to STS totaling one hundred fifty-

        thousand dollars ($150,000) in connection with the production of the

        Infomercial.

34.     STS and/or its agent/s represented to Hearthware that unused portions

        of its deposited monies would be refundable in the event that the

        Infomercial's production by STS did not proceed.

35.     Hearthware terminated its relationship with STS prior to complete

        Infomercial production by STS.

6

36. After Hearthware terminated its relationship with STS, STS unilaterally made a determination that it would retain the entire deposit.

37. STS retained the entire deposit.

38. In its Reconciliation, STS wrongly asserted entitlement to full payment for services as quoted by an earlier proposal, despite not completing such services.

39. Hearthware hereby demands an independent, thorough and full accounting of the actual Infomercial production costs sustained by STS, and demands return of all of its deposit monies that remain upon payment of the same.

**COUNT II**
ILLINOIS CONSUMER FRAUD ACT
<u>810 ILCS § 505/2</u>

40. Hearthware realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as part of this cause of action.

41. The actions of STS as described herein violate the Illinois Consumer Fraud Act, 810 ILCS §505/2.

42. Alex Dinsmoor's statement in his December 3, 2010 email to Opie Griffin is a false pretense and/or material misrepresentation as to how STS would handle Hearthware's deposit.

43. Upon information and belief, STS and/or its employee/agent intended that Hearthware rely upon said statement, specifically for the purpose of

7

enticing Hearthware to continue its relationship with STS and/or to secure Hearthware's issuance of a deposit check in the amount of $125,000 to STS.

44. Said statement was made in the course of trade and commerce with regard to the services and trade of STS.

45. Dinsmoor's false pretense/material misrepresentation proximately caused injury to Hearthware, as Hearthware relied upon said representation to continue its dealings with STS and in issuance of a deposit check in the amount of $125,000 to STS, which resulted in wrongful and fraudulent withholding of Hearthware's deposit money, additional costs for the eventual production of its Infomercial, expenditure of additional internal resources, and costly delays in Hearthware's eventual release of its Infomercial and the PIC to the public.

46. Hearthware hereby demands an award of damages in an amount to be determined at trial to compensate for its business losses and economic injury proximately caused by STS, in addition to an award of damages for the deposit monies fraudulently withheld from Hearthware by STS.

47. The foregoing conduct by STS was done with intent and/or reckless disregard for the rights of Hearthware, and Hearthware hereby demands an award of punitive damages to be determined at trial.

8

**COUNT III**
ILLINOIS COMMON LAW PROMISSORY ESTOPPEL

48. Hearthware realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as part of this cause of action.

49. STS employee Alex Dinsmoor's December 3, 2010 email to Opie Griffin contained an unambiguous promise/representation regarding the manner in which Hearthware's deposit payment would be handled by STS.

50. STS agent/employee Alex Dinsmoor's words caused Hearthware to believe that its funds would be handled as a refundable deposit and that said funds would be applied only to costs and not to arbitrary and unilaterally determined internal charges asserted by STS.

51. STS knew or should have known how it intended to handle deposit funds received from customers.

52. The refundable nature of the $125,000 deposit, as represented by STS, was material in inducing Hearthware to issue the same.

53. Hearthware had no reason to doubt and was caused to rely and act upon STS agent/employee Alex Dinsmoor's words.

54. Hearthware relied upon said promise/representation and issued a check in the amount of $125,000 to STS.

55.     Hearthware's reliance upon said promise/representation was expected
        and/or foreseeable by STS.

56.     STS did not handle Hearthware's deposit funds in a manner consistent
        with its representations to Hearthware, as said funds were not only
        applied to costs, but also to arbitrary and unilaterally determined
        internal charges asserted by STS.

57.     Hearthware's reliance upon said promise/representation resulted in
        detriment to Hearthware as its deposit money was wrongfully withheld
        by STS, and Hearthware's eventual Infomercial production project
        sustained costly delays.  Hearthware hereby demands an award of
        damages in an amount adequate to make Hearthware whole with regard
        to these detriments and injuries.

**COUNT IV**
ILLINOIS COMMON LAW CONVERSION

58.     Hearthware realleges and incorporates by reference the allegations
        contained in all preceding paragraphs of this Complaint as part of this
        cause of action.

59.     STS employee Alex Dinsmoor communicated to Hearthware that its
        deposit monies would be treated as a refundable deposit.

60.     Hearthware retained its rights and ownership of the deposit monies.

61.     STS unilaterally and without authorization exercised control over the
        entirety of the deposit monies.

62.     Hearthware demanded return of the wrongfully withheld deposit monies.

10

63.  Continuing to the date of this filing, STS has wrongfully and without authorization assumed control, dominion and ownership over the entirety of the deposit monies.

### COUNT V
### ILLINOIS COMMON LAW BREACH OF FIDUCIARY DUTY

64.  Hearthware realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as part of this cause of action.

65.  STS owed a fiduciary duty to Hearthware with regard to deposit monies paid to STS by Hearthware, particularly in light of:

(a)  Representations made by STS to Hearthware that its deposit funds would be refundable;

(b)  Representations made by STS to Hearthware to the effect that its funds would be used to cover costs rather than as unilaterally determined payments of profit to STS;

(c)  At all times relevant, Hearthware placed its trust and confidence in STS in the handling of its deposit monies;

(d)  Upon issuance of the deposit monies from Hearthware to STS, STS remained in a state of dominion and control over said monies.

66.  STS breached its fiduciary duty to Hearthware by unilaterally and without Hearthware's authorization paying deposit monies to STS, which STS kept as profit.

11

67.    Hearthware sustained financial loss and injury as a proximate result of the fiduciary breach committed by STS.

68.    As a proximate result of the breach of fiduciary duty, Hearthware lost its trust and confidence in STS and in its remaining dealings with the same. This directly resulted in Hearthware's termination of STS's construction of a set, and in turn, Hearthware's reliance upon additional third-party vendors for the performance of certain services already begun by STS.

69.    Hearthware's reliance upon additional third party vendors caused it to sustain further expenditures and losses. The breach of fiduciary duty by STS proximately caused Hearthware to sustain such expenditures and losses.

70.    The breach of fiduciary duty and trust committed by STS was done with intent and/or willfulness, particularly in light of the representations made by STS to Hearthware with regard to how its deposit monies were to be handled.

71.    Hearthware hereby demands an award of damages in the amount of said expenditures and losses to be determined at trial.

72.    Hearthware further prays for relief to include an award of punitive damages in amount not less than $75,000 for the breach of fiduciary duty committed by STS.

## JURY DEMAND

Hearthware hereby demands trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Hearthware prays for judgment against STS as follows:

(a) That judgment be entered for Hearthware on all of its claims as alleged in Counts I – V herein;

(b) That Hearthware be awarded damages in an amount not less than eighty thousand dollars ($80,000) for the reasonable return of portions of its deposit monies;

(c) That Hearthware be awarded damages to be determined at trial to compensate for business losses and economic injury sustained as a result of the conduct by STS as alleged herein;

(d) That Hearthware be awarded interest;

(e) That Hearthware be awarded punitive damages in an amount not less than seventy-five thousand dollars ($75,000);

(f) That pursuant to 815 ILCS §§ 505 et seq., STS be ordered to pay Hearthware its actual damages, full costs and reasonable attorneys' fees;

(g) For such other relief as this Honorable Court deems just and proper.

DATED this 8th day of September, 2011.

Respectfully submitted,

Lewis T. Steadman, Jr.
Lewis T. Steadman, Jr.
ARDC: 6182248
Hearthware, Inc.
General Counsel

1795 N. Butterfield Road
Libertyville, IL 60048
Telephone: (847) 596-6709
Fax: (847) 775-8131
Email: lewis@hearthware.com

Joseph W. Vucko
ARDC: 6297865
Hearthware, Inc.
Legal Counsel
1795 N. Butterfield Road
Libertyville, IL 60048
Telephone: (847) 596-6708
Fax: (847) 775-8131
Email: joseph@hearthware.com

# EXHIBIT A



**Direct Thinking for Direct Response®**

September 3, 2010

Mr. Jay S, Moon
General Director
IBC-Hearthware, Inc.
880 Lakeside Drive
Gurnee, Illinois 60031

Dear Jay:

This letter is written to confirm the commencement of our agreement regarding the production of an infomercial for IBC-Hearthware. The Letter of Agreement will allow Script to Screen to begin those processes that are often the most time consuming elements of infomercial production, while we review and agree to terms of the Infomercial Production Agreement.

Upon signing of this agreement, which requires our receipt of a $25,000 deposit, Script to Screen will begin preproduction elements of the IBC-Hearthware Infomercial.

Preproduction elements include but are not limited to:

- Product Orientation Meeting for further product/consumer information gathering, clarification and understanding
- Concept development
- Procurement of testimonials
- Location scouting/set design
- Talent/host search
- Preliminary calendar of target production dates.

The $25,000 deposit received by Script to Screen, pursuant to this agreement, will be credited toward the first payment of the Infomercial Budget, which will be due under the infomercial Production Agreement.

Each party acknowledges its authority to bind its respective firms.

If this letter correctly states our agreement, please so indicate by signing and returning a copy, along with a $25,000 check. Please keep an original agreement for your files.

_____          9-3-10
Script to Screen, Inc.                                     Date

_____          9-8-10
IBC-Hearthware, Inc.                                      Date

p.714-558-3971    200 N. Tustin Avenue, Suite 200, Santa Ana, CA 92705    f.714-558-1759