IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **HEARTHWARE, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) No. 11 C 6271 |
| | ) |
| **SCRIPT TO SCREEN PRODUCTIONS,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Script to Screen Productions' (STS) motion to dismiss. For the reasons stated below, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

Plaintiff Hearthware, Inc. (Hearthware) is a company that sells household products. In 2010, Hearthware allegedly began efforts to make an infomercial for one of Hearthware's new products to be released in the Spring of 2011. In September 2010, Hearthware allegedly entered into an agreement with STS for STS to produce the infomercial (Letter of September 3, 2010). The parties allegedly understood that STS would begin the process for the infomercial production, pending review and agreement to terms of an Infomercial Production Agreement. Pursuant to

the agreement in the letter, Hearthware agreed to deposit $25,000 with STS, subject to be credited for any amounts due under yet to be negotiated Infomercial Production Agreement. Hearthware allegedly provided STS with further monetary deposits. Hearthware contends that it was understood that unused portions of the deposits would be refundable in the event that Hearthware did not proceed with STS for the complete production of the infomercial.

On March 1, 2011, STS allegedly submitted a budget to Hearthware for the production of the infomercial that was greatly in excess of the budget agreed to by Hearthware. On March 14, 2011, Hearthware allegedly terminated its relationship with STS with regard to the production of the infomercial and requested the return of the remaining deposited funds. STS allegedly failed to return all the funds owed to Hearthware. Hearthware brought the instant action and includes in its complaint an unjust enrichment claim (Count I), a fraud claim brought under the Illinois Consumer Fraud and Deceptive Business Practices Act (Fraud Act), 815 ILCS 505/1, *et seq.* (Count II), a promissory estoppel claim (Count IV), a conversion claim (Count IV), and a breach of fiduciary duty claim (Count V). STS now moves to dismiss all claims.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), a court must "accept as true all of the allegations contained in a complaint" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(stating that the tenet is "inapplicable

to legal conclusions"); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To defeat a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that contains factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted).

## DISCUSSION

STS argues that Hearthware cannot proceed on Counts I-IV since, according to STS, a contract existed between the parties. STS also argues that Hearthware has not alleged sufficient facts to state a breach of fiduciary duty claim.

I. Counts I-IV

STS argues that the parties' relationship was governed by a contract and that Hearthware is thus foreclosed from brining an unjust enrichment claim, a Fraud Act claim, a promissory estoppel claim, or a conversion claim. Under Illinois law, the doctrine of unjust enrichment is premised on an implied contract and "where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992)(internal quotations omitted)(quoting in part (*La Throp v. Bell Federal Savings & Loan Association*, 370 N.E.2d 188 (Ill. 1977)). In regard to a

claim brought under the Fraud Act, Illinois courts have held that the Fraud Act "should not apply to simple breach of contract claims." *Village of Pawnee v. Azzarelli Const. Co.*, 539 N.E.2d 895, 913 (Ill. App. Ct. 1989). In regard to a claim for promissory estoppel, under Illinois law, if there existed "an enforceable contract between the parties . . . a party may no longer recover under the theory of promissory estoppel." *Prentice v. UDC Advisory Services, Inc.*, 648 N.E.2d 146, 150-151 (Ill. App. Ct. 1995). In regard to a claim for conversion, under Illinois law, "an action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money" since the claim must seek to recover a specific chattel consisting of a specific fund, coins, or bills. *In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985).

In the instant action, STS argues that the parties entered into a contract regarding the production of the infomercial. However, the Letter of September 3, 2010, which is attached to the complaint, merely indicates that there is an agreement to get the ball rolling relating to the infomercial production process. The Letter of September 3, 2010 provides that a $25,000 deposit must made to STS to get the ball rolling, and is subject to be credited for any amounts due under a yet to be negotiated Infomercial Production Agreement. Hearthware acknowledges in the complaint that it provided STS with the $25,000 deposit. (Compl. 14). The complaint also references an additional $125,000 deposit made by Hearthware to STS for the same purpose and reasons stated above. (Compl. 19-21). Thus, based on the record before the court, it is clear that the monies deposited totaling $150,000 by Hearthware with STS was not pursuant to a contract since the Infomercial Production Agreement was not yet formed. However, Hearthware asserts in the complaint that it is entitled to be

refunded $80,000 from the $150,000 deposits provided to STS pursuant to the Letter of September 3, 2010 and an email exchange on December 3, 2010. (Compl. Par. 2, 19). At issue in this case is whether Hearthware is entitled to the return of any portion of the $150,000 deposit under the claims included in Counts 1-IV. This issue is fact-intensive and cannot be resolved at the motion to dismiss stage. Based on the above, Hearthware is not barred from pursuing the claims in Counts I-IV. Therefore, the motion to dismiss Counts I-IV is denied.

II. Count V

STS contends that Hearthware has not alleged sufficient facts to state a breach of fiduciary duty claim. Under Illinois law, for a breach of fiduciary duty claim, a plaintiff must establish: (1) that "a fiduciary duty exists," (2) that "the fiduciary duty was breached," and (3) that "such breach proximately caused the injury of which the plaintiff complains." *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 709 (7th Cir. 2010)(internal quotations omitted)(quoting *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000)). Hearthware argues that it is not required at the pleadings stage to establish that a fiduciary duty existed. (Ans. 9-10). However, even when construing the allegations in the complaint in favor of Hearthware, Hearthware fails to allege facts that plausibly suggest that STS formed a fiduciary relationship with Hearthware. In the complaint, Hearthware's allegations suggest only that the parties entered into a business relationship regarding the production of the infomercial. Hearthware asserts that it "trusted" STS and provided STS with funds that were refundable if services were not performed. (Ans. 10). However, the Seventh Circuit

has stated that "[t]he essence of a fiduciary relationship is that one party is dominated by the other" and that "[t]he fact that one party trusts the other is insufficient" because "[w]e trust most people with whom we choose to do business." *Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119 (7th Cir. 1992). Hearthware cites no precedent that holds that a fiduciary relationship is established merely because one party in a business relationship pays money to and places trust in the other party. Hearthware does not allege any special relationship with STS that would suggest a fiduciary duty on the part of STS. *See, e.g, Pommier*, 967 F.2d at 1119 (listing examples of special relationships when a fiduciary duty exists as a matter of law); *Adams v. Catrambone*, 359 F.3d 858, 866 (7th Cir. 2004)(stating that "[s]hareholders in a close corporation owe to each other fiduciary duties similar to those of partners in a partnership"); *Target Market Pub., Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1146 (7th Cir. 1998)(stating that "[u]nder Illinois law, a fiduciary relationship exist[s] between partners in a joint venture"). Therefore, the motion to dismiss Count V is granted.

## CONCLUSION

Based on the foregoing analysis, the motion to dismiss Counts I-IV is denied and the motion to dismiss Count V is granted.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: January 17, 2012